**Arthur ARGENTINA and Mary Argentina, Plaintiffs–Appellants,**

v.

**EMERY WORLD WIDE DELIVERY CORP., Defendant–Third–Party–Plaintiff–Appellee,**

**Best Consulting Corp., Defendant–Appellee,**

P. Chimento Co., Inc., Third–Party
Defendant–Appellee,

Ever Sharpe Delivery Service,
Inc., Defendant.

**Docket No. 98–7183.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 15, 1998.

Question Certified Nov. 18, 1998.

Certified Question Answered by
New York Court of Appeals
July 1, 1999.

Decided Aug. 23, 1999.

Peter K. Ledwith, White, Quinlan, Staley & Ledwith, Garden City, N.Y. for Plaintiffs–Appellants.

William R. Ahmuty, III, Ahmuty, Demers & McManus, Albertson, N.Y., for Defendant–Appellee Best Consulting Corp.

Andrew A. Elman (William D. Bierman on the brief), Hannoch Weisman, P.C., Roseland, NJ, for Defendant–Third–Party Plaintiff–Appellee Emery World Wide Delivery Corp.

William Rome, Hoffman Pollok & Pickholz LLP, New York, NY, for Third–Party–Defendant–Appellee P. Chimento Co., Inc.

Before: WALKER, Circuit Judge, MUKASEY,* District Judge, and RESTANI,** Judge.***

PER CURIAM:

This is an appeal from a judgment of the United States District Court for the Eastern District of New York (Joanna Seybert, *District Judge*), dismissing plaintiffs-appellants' claims on the basis that the vehicle owned by defendant-appellee Emery World Wide Delivery Corp. was not the proximate cause of the injury suffered by plaintiff-appellant Arthur Argentina. The

---

* The Honorable Michael B. Mukasey, of the United States District Court for the Southern District of New York, sitting by designation.
** The Honorable Jane A. Restani, of the United States Court of International Trade, sitting by designation.

*** Pursuant to 28 U.S.C. § 46(b) and an order of the Chief Judge of this Court certifying a judicial emergency, this case was heard by a panel consisting of one judge of this Circuit and two judges sitting by designation.

plaintiffs alleged that the defendants' negligence in the ownership, use, control, and loading of a truck operated as part of Emery's business was responsible for injuries suffered by Argentina on March 12, 1991, when he was struck by a steel plate while unloading cargo from the truck at Emery's terminal at JFK International Airport.

On appeal, we certified two questions to the New York Court of Appeals concerning New York's Vehicle and Traffic Law § 388(1). *See Argentina v. Emery World Wide Delivery Corp.*, 161 F.3d 108, 112 (2d Cir.1998). That section provides, in pertinent part, that

> Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.

Plaintiffs' theory of the case was that Ever Sharpe Delivery Services, Inc., the company employed by Emery to load and unload cargo onto Emery's trucks, had negligently loaded the steel plate onto Emery's truck, and that this negligence was the proximate cause of Argentina's injuries. Plaintiffs argued that Emery should be held vicariously liable for Ever Sharpe's negligence because Ever Sharpe was a permissive user of Emery's truck.

In dismissing plaintiffs' claims, the district court acknowledged that the New York Court of Appeals had never directly answered the question of whether loading and unloading constitutes use or operation of a vehicle for purposes of § 388(1). Nevertheless, the district court assumed without deciding that loading and unloading constituted use or operation, but found that Emery still could not be held liable under § 388(1). Relying on the reasoning of the New York Court of Appeals in *Walton v. Lumbermens Mutual Casualty Co.*, 88 N.Y.2d 211, 215–16, 644 N.Y.S.2d 133, 666 N.E.2d 1046 (1996), a case concerning New York's no-fault insurance statute, N.Y. Ins. Law § 5103(a)(1), the district court held that, in order for the owner of a vehicle to be liable for injuries arising out of the use or operation of the vehicle, the vehicle itself must be the proximate cause of the injuries. Because the district court found that plaintiffs-appellants had "conceded" that the truck itself was not the proximate cause of Argentina's injuries while claiming that the proximate cause was the improper loading of the truck, it held as a matter of law that Emery was not liable.

On appeal, plaintiffs-appellants contended that the district court incorrectly incorporated the proximate cause rule from *Walton* into a case involving a different statute. Defendants-appellees contended on appeal that the district court improperly assumed that loading and unloading constitute use or operation of a vehicle within the meaning of § 388(1).

Finding that the case raised two legal issues that were open under New York law, we certified the following questions to the New York Court of Appeals:

(1) Whether, under New York's Vehicle and Traffic Law Section 388(1), loading and unloading constitute "use or operation" of a vehicle.

(2) Whether, under New York's Vehicle and Traffic Law Section 388(1), the vehicle must be the proximate cause of the injury before the vehicle's owner may be held vicariously liable.

The New York Court of Appeals has answered the first certified question in the affirmative and the second certified question in the negative. *See Argentina v. Emery World Wide Delivery Corp.*, N.Y. Slip. Op. 06308, 1999 WL 444345 (July 1, 1999) (attached here as an Appendix). It held that loading and unloading constitute use or operation of a vehicle within the meaning of New York's Vehicle and Traffic Law § 388(1), and that the vehicle need not be the proximate cause of an injury before the vehicle's owner may be held vicariously liable. The New York Court of Appeals held that, in light of the different

purposes served by New York's Vehicle and Traffic Law § 388(1) and New York's no-fault insurance statute, the district court erred in importing the proximate cause requirement under the no-fault insurance statute into Vehicle and Traffic Law § 388(1).

In light of the decision of the New York Court of Appeals, we vacate the district court's judgment and remand the case for further proceedings.

## CONCLUSION

The judgment of the district court is vacated and the case is remanded. Each party shall bear its own costs.

## APPENDIX

STATE OF NEW YORK

COURT OF APPEALS

USCOA, 2    No. 110

Arthur Argentina and Mary Argentina, Appellants,

v.

Emery World Wide Delivery Corp., Respondent,

Best Consulting Corp., Respondent,

P. Chimento, Inc., Third–Party Respondent,

Ever Sharpe Delivery Service, Inc., Defendant.

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

Peter K. Ledwith, for appellants.

Andrew A. Elman, for respondent Emery World Wide.

William A. Rome, for third–party respondent.

CIPARICK, J.:

The issue before the Court is whether a plaintiff who was injured while unloading a truck can recover damages from the truck's owner pursuant to Vehicle and Traffic Law section 388(1) when the truck itself was not the instrumentality that caused the injury. Finding the issue to be an open one, the United States Court of Appeals for the Second Circuit certified the following questions to this Court:

"Whether, under New York's Vehicle and Traffic Law Section 388(1), loading and unloading constitute 'use or operation' of a vehicle.

"Whether, under New York's Vehicle and Traffic Law Section 388(1), the vehicle must be the proximate cause of the injury before the vehicle's owner may be held vicariously liable."

We answer the first question in the affirmative and the second in the negative.

I.

The tort action here results from injuries suffered by plaintiff Arthur Argentina when a steel plate fell on him while he was unloading cargo from a truck owned by defendant Emery World Wide Delivery Corporation. Argentina and his spouse sued Emery in the United States District Court for the Southern District of New York, claiming that Emery was liable for their damages under Vehicle and Traffic Law section 388(1), which imposes liability on all vehicle owners for accidents resulting from negligence in the permissive "use or operation" of their vehicles. The parties agree for purposes of this Court's determination that Ever Sharpe Delivery Services, Inc. (now defunct and no longer sued by plaintiffs) negligently loaded the steel plate onto the truck at Newark International Airport before plaintiff attempted to unload the cargo at Emery's terminal at John F. Kennedy International Airport. After Emery filed a third–party complaint against Argentina's employer, P. Chimento, Inc., Emery and Chimento (collectively

"defendants") moved for summary judgment.

The District court assumed without deciding that loading and unloading constitute "use or operation" under section 388(1), but, relying on *Walton v. Lumbermens Mutual Casualty Co.*, 88 N.Y.2d 211, 644 N.Y.S.2d 133, 666 N.E.2d 1046 (1996), granted defendants' motions on the ground that the vehicle itself was not a proximate cause of the injury. After plaintiffs appealed to the Second Circuit, the Court certified the above questions to us.

## II.

While Vehicle and Traffic Law § 388(1) does not itself speak to whether loading and unloading fall within its reach, the history of the provision makes clear that those activities are indeed covered. Section 388(1) is derived from former section 59 of the Vehicle and Traffic Law of 1929, which in turn was derived from former section 282–e of the Highway Law of 1909. Until 1958, those statutes imposed liability on a vehicle's owner for injuries resulting from negligence in the permissive "operation" of a motor vehicle (*see,* former section 59, Vehicle and Traffic Law of 1929; former section 282–e, Highway Law of 1909).

In 1957, the Law Revision Commission concluded that the word "operation" as used in former section 52 of the Vehicle and Traffic Law had been interpreted too narrowly by some courts. Section 52 designated the Secretary of State as the person to receive service of process for all non resident owners of vehicles who "operated" them and were involved in accidents in New York (*see,* former Vehicle and Traffic Law § 52). The Law Revision Commission was critical specifically of those cases that had read "operation" of a vehicle to exclude "various acts done with or to the

vehicle when it is not actually in motion, such as unloading or making repairs," all of which dealt with injuries incurred while a vehicle was being unloaded (Legislative Documents [1958], No. 65 [G] & [H], Law Revision Commission, Recommendations of the Commission to the Legislature, at 648 [Dec. 17, 1957], *citing Mulligan v. Jersey Truck Renters*, 196 Misc. 828, 95 N.Y.S.2d 232 (1949); *Brown v. Hertz Drivurself Stations*, 203 Misc. 728, 116 N.Y.S.2d 412 (1952); *DeLuca v. Consolidated Freight Lines*, 132 F.Supp. 863 (E.D.N.Y.1955)).

In order to forestall further narrow readings of "operation," the Commission recommended, and the Legislature enacted, new versions of sections 52 and 59 to add "use" everywhere that "operation" appeared (*see,* L. 1958, ch. 577, § 1). As the Law Revision Commission explained, the changes were necessary to extend the application of the provisions to cases where an accident occurs during the use of the vehicle that "is not technically an 'operation' of the vehicle under the narrow construction given the term by some decisions" (Law Revision Commission, Recommendation to the Legislature, *op. cit.,* note at 631). The change from "negligence in the operation" to "negligence in the use or operation" of a vehicle in what is now section 388(1) thus signaled that the Legislature intended the statute to include loading and unloading.

Notably, the statute has not been limited to situations where the vehicle is in motion (*see, Elfeld v. Burkham Auto Renting Co.*, 299 N.Y. 336, 345, 87 N.E.2d 285 (1949); *Eckert v. G.B. Farrington Co.*, 262 App.Div. 9, 27 N.Y.S.2d 343 (1941), *affd* 287 N.Y. 714, 39 N.E.2d 932 (1942); *see also, Guadagno v. H.S. Trucking*, 29 A.D.2d 979, 289 N.Y.S.2d 691 (1968); *Aranzullo v. Collins Packing Co.*, 18 A.D.2d 1068, 239 N.Y.S.2d 398 (1963)). The inclusion of loading and unloading of a vehicle[1]

---

1. Mere "preparatory and preliminary activity" antecedent to loading or unloading of the vehicle would, however, fall outside of section

388(1)(*Frontuto v. Ray Burgun Trucking Co.*, 78 N.Y.2d 938, 939).

within the statute's protections thus also fits logically with previous interpretations of the law and continues to fulfill the primary legislative objective, which is "to provide recourse to an injured party against a person, financially able to respond, without whose conduct in permitting use of the vehicle the accident would not have happened" (Law Revision Commission, *op. cit.*, at 593; *see also*, Vehicle and Traffic Law § 310[2] [Declaration of purpose]).

Finally, we disagree with defendant's contention that a New York Department of Insurance regulation (11 NYCRR 60-1.1[c][3][iii]) compels a different result. Under the regulations, an owner, as the named insured, is covered for accidents arising out of the use or operation by permissive users of a motor vehicle (11 NYCRR 60-1.1[a]). However, as noted by defendants, the policy need not cover the liability of a third party for accidents occurring in the loading or unloading of the vehicle (11 NYCRR 60-1.1[c][3][iii]). Thus, in this case, neither Chimento, Argentina's employer, nor Ever Sharpe Delivery, who loaded the truck, needed to be an "insured" under Emery's liability. The scope of Emery's policy as required under regulations interpreting the Motor Vehicle Financial Security Act (Vehicle and Traffic Law §§ 310 *et seq.*), however, does not define the reach of vicarious liability under section 388(1).

Thus, we answer the first certified question in the affirmative: a vehicle's owner can be vicariously liable under section 388(1) for injuries resulting from a permissive user's negligent loading and unloading.

### III.

The second question, to which we now turn, probes the limit of an owner's vicarious liability by asking whether the vehicle

itself must be a[2] proximate cause of plaintiff's injury. In resolving this issue, the district court mistakenly relied upon the case of *Walton v. Lumbermens Mutual Casualty Co.*, (*supra*, 88 N.Y.2d 211). In *Walton*, the accident occurred when a "levelator," a separate device used to convey goods from a truck to the loading dock, tipped over, tossing defendant to the ground. There we were asked to interpret a provision in the no-fault insurance law— "for loss arising out of the use or operation * * * of such motor vehicle" (*see*, Insurance Law § 5103[a][1]). We held that where a person's injuries while unloading a truck were produced by an instrumentality other than the vehicle itself, first party benefits under the no-fault insurance law were not available.

Based on the similarity of language of Insurance Law section 5103(a)(1) and Vehicle and Traffic Law section 388(1) and because both provide recovery for injuries from motor vehicle accidents, the District Court in this case held that section 388(1) should be interpreted synonymously with the no-fault law. Since there were no allegations that "the placement of the truck or any other condition of the vehicle contributed to this injury," defendants, in the District Court's view, were entitled to summary judgment. Although *Walton* and the no-fault law provide a tempting analogy, the no-fault law's linguistic resemblance to section 388(1) is not enough to compel the conclusion that the vehicle must be the instrumentality that causes or contributes to the injury. The two laws are distinct, with different purposes.

The no-fault insurance law provision at issue in *Walton* stated that a person is entitled to first-party benefits from the insurer of a vehicle for losses arising out of the use or operation of such motor vehicle regardless of fault (Insurance Law § 5103[a][1]). The legislative history be-

**2.** The certified question states "the" proximate cause, which implies the sole proximate cause of the injury. Since there may be more than one proximate cause of an injury (*see*,

*Forte v. City of Albany*, 279 N.Y. 416, 422; 1A NY PJI 2:71), we consider the question to ask whether the vehicle was "a" proximate cause of the injury.

hind that statute indicated that where "plaintiff's injury was caused by an instrumentality other than the insured vehicle, liability for the losses sustained are more properly addressed outside the area of no-fault motor vehicle insurance" (*id.* at 214). As a result, "[a] person engaged in loading and unloading the vehicle may be using it within the meaning of the statute, but that does not necessarily mean that his or her injuries arose out of the use of the vehicle" (*id.* at 216). Indeed, Walton's injuries did not arise out of the use or operation of the truck, but instead out of the use and operation of the levelator.

*Walton* created a needed limit to the benefits of no-fault insurance in line with that law's purposes. "Its purposes were to remove the vast majority of claims arising from vehicular accidents from the sphere of common-law tort litigation, and to establish a quick, sure and efficient system for obtaining compensation for economic loss suffered as a result of such accidents" (*Walton v. Lumbermens Mut. Cas. Co., supra,* 88 N.Y.2d at 214). As then-Governor Rockefeller explained in his memorandum approving the bill, the no-fault law assured that every auto accident victim would be compensated promptly without regard to fault, that "the vast majority of auto accident negligence suits" would be eliminated, "freeing our courts for more important tasks," and that "substantial premium savings [would accrue] to all New York motorists" (Governor's Approval Mem., L. 1973, ch. 13, § 1, *reprinted in* 1973 Legislative Document No. 18, at 7 [Rep. of the Joint Legislative Comm. on Insurance Rates, Regulation and Recodification of the Insurance Law]; *see also,* "New York Adopts No-Fault: A Summary and Analysis," 37 Albany L. Rev. 662).

Additionally, no-fault insurance avoids litigation costs including the burden of attorney's fees that cut into the amounts ultimately received by accident victims (*see,* Prosser and Keeton, Torts § 84, at 600–607 [5th ed.]). No-fault insurance works to ameliorate these problems, but not all injuries in and among motor vehicles were meant to benefit from the expediency provided by the no-fault law.

The purpose of section 388(1) of the Vehicle and Traffic Law is different. Unlike the no-fault law, it is not meant to be an expedient in procuring coverage for losses due to motor vehicle use, but instead to ensure recourse to the vehicle's owner, a financially responsible party (*Morris v. Snappy Car Rental,* 84 N.Y.2d 21, 27, 614 N.Y.S.2d 362, 637 N.E.2d 253 (1994); *Fried v. Seippel,* 80 N.Y.2d 32, 41, 587 N.Y.S.2d 247, 599 N.E.2d 651 (1992)). Section 388(1) also seeks to discourage owners from permitting people who are irresponsible or who might engage in unreasonably dangerous activities to use their vehicles (*Fried v. Seippel, supra*).

Furthermore, section 388(1) differs from Insurance Law § 5103(a)(1) in that it relies on the traditional limitation on recovery—proof of fault. Section 388(1) only encompasses injuries "resulting from negligence in the use or operation" of a motor vehicle. The fault requirement thus shifts the emphasis of the statute and gives it a different limiting principle from that of the no-fault law. This Court has specifically noted that "it may not be desirable or even rational * * * to attenuate the concept of use indefinitely" (*Breen v. Cunard Lines Steamship Co.,* 33 N.Y.2d 508, 511, 355 N.Y.S.2d 333, 311 N.E.2d 478 (1974)). The proximate cause limitation in *Walton* was necessary to avoid an overbroad application of the no-fault law. No similar concern arises regarding section 388(1) since it comes with a built-in limitation. Negligence in the use of the vehicle must be shown, and that negligence must be a cause of the injury (*see, Martin v. Herzog,* 228 N.Y. 164, 126 N.E. 814 (1920)).

Having different purposes, section 5103(a)(1) of the Insurance Law and section 388(1) of the Vehicle and Traffic Law should not be interpreted identically. The touchstone of no-fault liability is loss from the use or operation of a vehicle regardless

of fault. It was enacted to compensate for injuries without proving negligence. On the other hand, the touchstone of section 388(1) is injury resulting from the negligence in the use or operation of a vehicle. Here, it is uncontroverted for the purposes of this case that the truck was negligently loaded, a use contemplated by the Legislature. To read an additional limitation into section 388(1) and require that the vehicle itself be the instrumentality or a proximate cause of plaintiff's injury would tend to circumvent the statute's negligence requirement and unduly limit its intended beneficial purpose.

Thus, we answer the second certified question in the negative: for claims under section 388(1) of the Vehicle and Traffic Law, the vehicle itself need not be a proximate cause of the injury.

Accordingly, the first certified question should be answered in the affirmative, and the second certified question should be answered in the negative.

\* \* \*

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to § 500.17 of the Rules of Practice of the New York State Court of Appeals, and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question No. 1 answered in the affirmative and certified question No. 2 answered in the negative. Opinion by Judge Ciparick, Chief Judge Kaye and Judge Bellacosa, Smith, Levine, Wesley and Rosenblatt concur.

Decided July 1, 1999.